# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DUCALA, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-08-408-SPS |
| JACK CORMAN, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Plaintiff Ducala, Inc. sued the Defendant Jack Corman to quiet title to leased minerals and obtain declaratory relief related thereto. Both sought summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the Defendant's Motion for Summary Judgment with Supporting Brief [Docket No. 25] is hereby GRANTED, and the Plaintiff's Motion for Summary Judgment and Brief in Support [Docket No. 28] is hereby DENIED.

### A. Factual Background

On October 27, 2003, the Oklahoma Corporation Commission issued Order No. 482010, which granted Corman's request to force-pool oil and gas interests in the Lower Boggy (Bartlesville), Upper Savanna, Lower Savanna, Upper Booch, Middle Booch and Hartshorne formations underlying Section 8, Township 6 North, Range 14 East, Pittsburg County, Oklahoma. Corman sent documents styled "Division Orders" to mineral owners in Section 8, including Betty June Garman; Edwina Mae Robins; Oscar David and Betty Laverne Martin; Temple Ellen and D.A. Maisano; Leon R. Calonkey, Trustee of the Leon

R. Calonkey Revocable Trust dated February 9, 1994; Carter L. Baumert; Calonkey Trust, an Oklahoma Trust; Arrowhead Petroleum; Bishop J. Edward Slattery, Bishop of the Diocese of Tulsa; and, Masonic Charity Foundation. The "Division Orders" contain a list of agreements purporting to create mineral leases, including the following covenant:

> The undersigned, upon request, agree to furnish with satisfactory abstracts and other evidence of title, and, in case of failure to do so, or in case of any adverse claim or dispute of title to production sold hereunder or to the land from which produced, is authorized to hold the said proceeds until such defect of title is corrected or such adverse claim or dispute is fully settled and determined to the satisfaction of Jack Corman unless indemnity acceptable to Jack Corman shall be furnished. In the event any suit is filing affecting any of the interests of the undersigned in the above described land or affecting any interest of the undersigned in the production or to the proceeds therefrom, the owners of the interests so affected agree to hold Jack Corman harmless from judgment rendered in such suit, and all reasonable costs and expenses incurred in defending such claim, and from all liability for loss, cost, damage and expenses which Jack Corman may suffer or incur on account of receiving and paying said owners the proceeds apportioned hereunder. Further as of the date of the execution hereof, the undersigned, for and in consideration of the sum of Ten ($10.00) and other good consideration, the receipt of which is hereby acknowledged, does hereby lease and let exclusively to Jack Corman for the purpose of exploring, drilling and operating for and producing oil, gas and all other minerals, all his interest in the lands above described for a term of one year from date and as long thereafter as oil, gas and all other minerals is produced from said lands or lands pooled therewith. The royalty to be paid to the undersigned on oil, gas, and other minerals shall be three-sixteenth of all the oil, gas and other minerals product [sic] from such land or lands pooled therewith times the undersigned's percentage of ownership in the oil, gas and other minerals in said land.

The foregoing mineral interest owners of record signed these "Division Orders" and returned them to Corman.

On April 16, 2004, Corman filed an affidavit in the office of the Pittsburg County Clerk indicating that he held leases covering the *entire* mineral interests of the foregoing

interest owners (not just their pooled interests) underlying Section 8.  On April 16, 2007, Corman filed a memorandum in the office of the Pittsburg County Clerk indicating again that he held leases covering the *entire* mineral interests of the foregoing interest owners (not just their pooled interests) underlying Section 8 in the form attached as Exhibit A, which was a copy of the "Division Order" signed by Bishop Slattery.  None of the other "Division Orders" signed by the mineral interest owners were filed with the office of the Pittsburg County Clerk, although they are otherwise identical in all material respects.

In June 2007, Ducala leased "deep rights," *i. e.*, the mineral interests underlying the formations pooled in Order No. 482010, from Bishop Slattery and from some of the heirs of Edwina Mae Robins.  Ducala was aware of the affidavit filed by Corman in the office of the Pittsburg County Clerk when it took these leases.  Ducala was aware of both the affidavit *and* the memorandum filed by Corman in the office of the Pittsburg County Clerk when it later took leases from other heirs of Edwina Mae Robins.

### B.  Analysis

Ducala contends it is entitled to summary judgment quieting title to its interests in the "deep rights" leased from Bishop Slattery and from the Robins heirs because: (i) the "Division Orders" are not valid leases; (ii) even if the "Division Orders" otherwise *could be* valid leases, they would nevertheless fail for lack of consideration; and, (iii) even if the "Division Orders" *actually are* valid leases, they are inferior and subject to Ducala's leases as a bona fide purchaser, *i. e.*, Ducala took its interest in the "deep rights" without notice of Corman's prior interest under the "Division Orders."  Corman contends he is

the one entitled to summary judgment because: (i) Ducala is a stranger to the "Division Orders" and therefore lacks standing to assert their invalidity; (ii) the "Division Orders" are not invalid, as mineral leases or otherwise; and, (iii) Ducala's leases are inferior to the "Division Orders" because Ducala took them with knowledge of Corman's claims and thus cannot be a bona fide purchaser. The Court will address the validity of the "Division Orders" (as mineral leases and otherwise) and then any priority they may have *vis a vis* Ducala's leases.

First, Ducala has not shown that the "Division Orders" are invalid under 52 Okla. Stat. § 570.11. Ducala argues in this regard that: (i) the "Division Orders" are in conflict with the terms of Ducala's leases and Order No. 482010 (which Ducala contends is a "forced lease"); and, (ii) the "Division Orders" are *division orders*, not mineral leases, and therefore cannot create a leasehold estate. The primary proposition here would seem to be that a division order (valid or otherwise under Section 570.11) cannot also be a mineral lease, even if it contains all the elements of a mineral lease, *i. e.*, Ducala does not contend that the "Division Orders" fail as mineral leases for lack of any of the necessary elements (other than consideration, which is discussed below), or that they are otherwise invalid apart from incorporation into division orders. But Ducala has cited no authority for this proposition, and the Court is aware of none. Nor has Ducala persuaded the Court that the "Division Orders" are invalid under Section 570.11 because they conflict with the terms of Order No. 482010 or Ducala's own leases. Regarding the former, the "Division Orders" simply do not conflict with Order No. 482010; while they clearly go beyond the

terms of Order No. 482010, *i. e.*, the "Division Orders" lease not only the pooled interests but also the underlying "deep rights," there is nothing in the order or Section 570.11 that seems to forbid this.  And regarding the latter, while the "Division Orders" clearly *do* conflict with Ducala's leases, this is hardly Corman's fault; it was the lessors and Ducala who negotiated leases with knowledge that the property had already been leased to Corman.  In any event, Ducala cites no authority for the proposition that Section 570.11 invalidates an otherwise valid mineral lease (or even a related division order) simply because the lessor elects to grant a conflicting lease to another lessee, and the Court cannot so find.  Conflict between the "Division Orders" and Ducala's leases would thus seem material *not* to the *validity* of the "Division Orders" (as division orders under Section 570.11), but instead to the *priority* of the "Division Orders" as mineral leases.

Second, Ducala has likewise not shown that the "Division Orders" are defective as mineral leases for lack of consideration.  Because they are written, the "Division Orders" are presumed to have consideration, *see* 15 Okla. Stat. § 114 ("A written instrument is presumptive evidence of a consideration."), a presumption that Ducala must not simply rebut but conclusively overcome in order to obtain summary judgment.  *See* 15 Okla. Stat. § 115 ("The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it.").  Ducala opts not for any rebuttal evidence, *e. g.,* an affidavit from its lessors that the consideration recited in the "Division Orders" was never received, but instead for a formal argument, *i. e.*, that the consideration recited in the "Division Orders" was required because of Order No. 482010

and could not serve as consideration for a lease. *See, e. g., Mid-Continent Petroleum Corp. v. Wilhoit,* 1954 OK 127, ¶ 0, 270 P.2d 645, 646 ("The performance of promise of performance of a duty imposed by law or of a duty which one is already legally bound to perform, is not a sufficient consideration to support a contract.") [syllabus 3]. But this argument overlooks two points: the recitals in the "Division Orders" applied to both the pooled interests (for which the recited consideration *was* required by Order No. 482010) *and* the "deep rights" (for which the recited consideration *was not* required), and even if any consideration for the "deep rights" was purely nominal (as a $10.00 recital suggests), "it should be presumed that the principal consideration was to secure development of the property." *Chi-Okla Oil & Gas Co. v. Shertzer,* 1924 OK 845, ¶ 6, 231 P. 877, 878, 105 Okla. 411. The Court is thus not persuaded that Ducala has shown lack of consideration as a legal matter or even a factual question on this point.[1]

Third, Ducala has not shown that it took its interests in the "deep rights" as a bona fide purchaser. A literal reading of the Oklahoma recording statute suggests that priority among conveyances depends solely upon who was the first to file properly, which would favor Ducala because its leases are undoubtedly properly recorded while the "Division Orders" arguably are not, *i. e.*, the "Division Orders" are not directly recorded (nor even directly *recordable*) because they are not acknowledged, and thus appear of record solely

---

[1] Because Ducala has not shown the "Division Orders" to be in any way invalid, the Court need not address Corman's contention that Ducala lacks standing to assert invalidity of the "Division Orders." *See, e. g., Alling v. Lynch,* 1928 OK 514, ¶ 10, 134 Okla. 276, 273 P. 361, 362 (a stranger to a royalty contract may not seek reformation or cancellation), *citing Gypsy Oil Co. v. Schonwald,* 1924 OK 1133, ¶ 6, 231 P. 864, 867, 107 Okla. 253 (a stranger to a mineral lease may not seek rescission or reformation for fraud or mistake).

by reference in Corman's recorded affidavit (or for the Bishop Slattery "Division Order" by attachment to Corman's memorandum). *See, e. g., Crater v. Wallace,* 1943 OK 250, ¶¶ 10-12, 193 Okla. 32, 140 P.2d 1018, 1019 ("It is apparently conceded that the making, filing, and recording of the affidavit and articles of partnership . . . were not sufficient to constitute constructive notice . . . The affidavit here involved was not entitled to be recorded and is not a conveyance of real property within the meaning of the [recording] statute. The recording thereof of itself could not give constructive notice."), *citing Smiley v. Scott,* 1916 OK 669, 59 Okla. 160, 158 P. 919. *See also* 16 Okla. Stat. § 15 ("[N]o deed, mortgage, contract, bond, lease, or other instrument relating to real estate other than a lease for a period not exceeding one (1) year and accompanied by actual possession, shall be valid as against third persons *unless acknowledged and recorded as herein provided.*") [emphasis added]. But the recording statute has not been read so literally as to preclude *any* inquiry about actual (as opposed to constructive) notice; for example, the common law bona fide purchaser doctrine has continued vitality even if properly filed conveyances appear of record. *See Williams v. McCann,* 1963 OK 204, ¶ 12, 385 P.2d 788, 790 ("The rule is well established in this jurisdiction that in the transfer of real estate in the absence of actual or constructive notice of a previous conveyance or of matters which would put a purchaser on inquiry, a bona fide purchaser for value will take good title to the property. This has been held by us both as to deeds and oil and gas leases."), *citing Barker v. British American Oil Producing Co.,* 1953 OK 28, ¶ 10, 256 P.2d 807, 809 ("[I]n the absence of actual or constructive notice of a previous conveyance, or of

matters which would put a purchaser on inquiry, a bona fide purchaser for value will take a good title to the property."), *quoting Metzger v. Mueller,* 1951 OK 274, ¶ 5, 205 Okla. 490, 238 P.2d 802, 804. *Compare Amarex, Inc. v. El Paso Natural Gas Co.,* 1987 OK 48, ¶ 14, 772 P.2d 905, 908 ("Third persons rely upon the land records for information regarding encumbrances upon interests in land. As an instrument affecting rights in real estate, the document providing notice of . . . a lien *must be filed in accordance with the recording requirements of Title 16 to be valid as against third persons.*") [emphasis added]; *Elsey v. Shaw,* 1947 OK 387, ¶ 13, 190 P.2d 439, 442 ("The rule of law is that the party holding the deed first to be filed for record is the owner of the land."), *quoting McAllister v. Clark,* 1923 OK 343, ¶ 0, 91 Okla. 205, 217 P. 178, 179 [syllabus 1]. Thus, although arguably the first to record properly under the statute, Ducala must nevertheless show it was a bona fide purchaser of the "deep rights" in order to defeat Corman's prior claim thereto, *i. e.*, Ducala must show: "(1) the payment of a valuable consideration; (2) good faith and the absence of purpose to take an unfair advantage of third persons; and (3) absence of notice, actual or constructive, of outstanding rights of others." *Big Four Petroleum Co. v. Quirk,* 1988 OK 21, ¶ 10, 755 P.2d 632, 634, *citing Luschen v. Stanton,* 1943 OK 177, 192 Okla. 454, 137 P.2d 567. But Ducala concedes it had *actual notice* of the affidavit filed by Corman in the office of the Pittsburg County Clerk (and knowledge of its contents) before taking any of its leases; the affidavit clearly indicated that Corman claimed to hold leases not only on the pooled interests but also the entire mineral estate of the grantors, including Bishop Slattery and Edwina Mae Robins. *See, e. g., Creek Land*

*Improvement Co. v. Davis,* 1911 OK 85, ¶ 6, 28 Okla. 579, 115 P. 468, 469 ("Actual notice means, among other things, knowledge of facts and circumstances so pertinent in character as to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts."). *See also* 25 Okla. Stat. § 11 ("Actual notice consists in express information of a fact.").[2] This information required Ducala to at least inquire about Corman's claim or risk taking any competing leases subject thereto. *See* 25 Okla. Stat. § 13 ("Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."). Ducala therefore cannot be a bona fide purchaser with regard to the "deep rights" leased from Bishop Slattery and the Robins heirs, as it took those leases with actual notice of

---

[2] The parties debate whether the affidavit and memorandum imparted *constructive* notice of the leases contained in the "Division Orders" under the recording statute; Corman contends that Ducala had constructive notice because the affidavit and memorandum were filed of record, while Ducala counters that these instruments imparted no constructive notice because the "Division Orders" were not themselves properly recorded (nor even recordable). *See, e. g., Crater,* 1943 OK 250 at ¶¶ 10-12, 140 P.2d at 1019 ("It is apparently conceded that the making, filing, and recording of the affidavit and articles of partnership . . . were not sufficient to constitute constructive notice . . . The affidavit here involved was not entitled to be recorded and is not a conveyance of real property within the meaning of the [recording] statute. The recording thereof of itself could not give constructive notice."), *citing Smiley,* 1916 OK 669, 158 P. 919. But the Court need not resolve this dispute because, as discussed above, the affidavit imparted sufficient *actual* notice of Corman's interests. *See, e. g., Livley v. Davis,* 1966 OK 11, ¶ 16, 410 P.2d 851, 854 ("We recognize generally that actual knowledge of an unrecorded mortgage acts as though the mortgage had been duly recorded."). *See also Continental Supply Co. v. Marshall,* 52 F. Supp. 717, 721 (W.D. Okla. 1943) ("The recording and filing statutes are intended to give constructive notice. If one has actual notice, whether he also has constructive notice, is not material."), *citing Morgan v. Stanton Auto Co.,* 1930 OK 111, ¶ 12, 142 Okla. 116, 285 P. 962, 963 (discussing chattel mortgages); *Ponder v. Beeler Motor Co.,* 1936 OK 127, ¶ 15, 176 Okla. 385, 55 P.2d 1010, 1012 ("It is in line with the general current of authority to uphold conditional sales of personal property as valid against those who purchase the same with notice, either constructive or actual.").

Corman's claim. *See Big Four Petroleum,* 1988 OK 21 at ¶ 13, 755 P.2d at 635 ("A purchaser with notice is considered a purchaser made *male fide*, and a purchaser with notice is not entitled to protection as a bona fide purchaser, but takes subject to outstanding interests, even though he may have given full value."), *quoting Wilson v. Pennington,* 1970 OK 167, ¶ 10, 474 P.2d 658, 661, *quoting* 55 AM JUR *Vendor and Purchaser* § 685. *Compare Crater,* 1943 OK 250 at ¶¶ 15-17, 140 P.2d at 1020 ("There is no direct evidence that Vickers or either of the Wallaces actually examined or read the affidavit or the record thereof . . . [T]he most that may be inferred as concerns actual knowledge on the part of Vickers or the Wallaces is that they knew that an affidavit of some character concerning the title had been recorded . . . We do not think the evidence here is sufficient to constitute such constructive notice thereunder.").

In summary, Ducala has not shown that the mineral leases granted to Corman in the "Division Orders" were invalid, lacking in consideration, or inferior to Ducala's own leases under the bona fide purchaser doctrine. Ducala is consequently not entitled to have summary judgment in its favor pursuant to Fed. R. Civ. P. 56 on its quiet title claim or on its related claims for declaratory relief. On the other hand, because there are no factual disputes material to any of these issues, Corman *is* entitled to have summary judgment in his favor on Ducala's claims. *See* Fed. R. Civ. P. 56(c)(2) ("The judgment sought shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").

## C. Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment with Supporting Brief [Docket No. 25] is hereby GRANTED, and the Plaintiff's Motion for Summary Judgment and Brief in Support [Docket No. 28] is hereby DENIED. The Court will separately render judgment in accordance herewith in favor of the Defendant Jack Corman and against the Plaintiff Ducala, Inc. pursuant to Fed. R. Civ. P. 58(a).

**IT IS SO ORDERED** this 29th day of March, 2010.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**